IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE I. EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 C 10071 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| CAROLYN W. COLVIN,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Catherine Edwards, seeks an order reversing or remanding the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") (doc. # 17: Pl.'s Mot. for Summ. J. ("Pl.'s Mot.")). The Commissioner has filed a memorandum seeking to affirm the denial of benefits (doc. # 21: Def.'s Mem. in Opp'n to Pl.'s Mot. ("Def.'s Mem.")). For the reasons set forth below, we grant Ms. Edwards's motion.

I.

We begin with the procedural history. On November 17, 2009, Ms. Edwards applied for SSI alleging that she became unable to work due to a disability beginning December 31, 2007 (R. 13-15). Her application was denied initially on January 25, 2010, and upon reconsideration on August 9, 2010 (R. 52, 63). She requested a hearing before an administrative law judge ("ALJ"), which was granted, and subsequently a hearing was held on June 17, 2011 (R. 22-51).

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Carolyn W. Colvin as the named defendant.

[2]On February 5, 2013, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 7, 9).

On August 12, 2011, the ALJ issued a decision finding that Ms. Edwards was not disabled under section 1614(a)(3)(A) of the Social Security Act ("the Act") from November 17, 2009 through the date of the decision (R. 11-17). The Appeals Council denied Ms. Edwards's request for review on October 23, 2012 (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Pepper v. Colvin,* 712 F.3d 351, 361 (7th Cir. 2013).

## II.

We next summarize the administrative record. We set forth the general background and relevant medical records in Part A, followed by a review of the hearing testimony in Part B and the ALJ's written opinion in Part C.

### A.

Ms. Edwards was born on December 10, 1965 (R. 113). She completed high school and lives with her long-term boyfriend (R. 28, 38). Ms. Edwards worked as a housekeeper in a nursing home from 1991-1994, a mail sorter from 1994-1997, and an assembly line worker from 1997-1999 (R. 29, 127). Ms. Edwards testified that after 2000, she worked briefly as a sorter and as a babysitter (R. 40-42, 127). Ms. Edwards has a history of tobacco, alcohol, marijuana, and cocaine use (R. 210, 388, 442). She smokes about one pack of cigarettes a day, and she smokes crack cocaine a couple times per month (R. 399).

In 2000, Ms. Edwards was diagnosed with colon cancer and had a colostomy (R. 210).[3] From 2007 through 2011, she went to Stroger Hospital regularly for colostomy supplies (R. 231-58). There are no medical records from a primary physician or treating specialist.

---

[3]Colostomy is a surgical procedure that brings one end of the large intestine out through the abdominal wall. Stools moving through the intestine drain into a bag attached to the abdomen. *Colostomy,* U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/002942.htm.

Ms. Edwards first reported problems with the colostomy in July 2, 2009, when she came to the emergency room complaining of moderate bleeding in the colostomy bag (R. 210). A colonoscopy was performed, which was an "essentially normal exam" (R. 212). Her discharge diagnoses were bleeding at the ostomy site, iron deficient anemia, and a fungal skin infection (R. 211).[4] The doctor noted that Ms. Edwards could perform daily activities "as tolerated," including eating, dressing, bathing, cooking, shopping, cleaning/laundry, walking, using stairs, and moving from bed to chair (R. 213). The only activity restriction ordered was no heavy lifting (*Id.*). The doctor stated he "suspect[s] at some point she could be re-attached and the colostomy taken down" (R. 227). Ms. Edwards was told to schedule follow up appointments with a colorectal surgeon and general gastroenterology office (R. 215), but this follow up did not occur.

On January 8, 2011, Ms. Edwards was admitted to the hospital because of bleeding in her colostomy bag, and on January 10, 2011, a colonoscopy was performed (R. 311). The discharge diagnosis was "GI bleed, possibly around stoma stump site" (R. 289). The doctor noted that Ms. Edwards could perform daily activities and did not provide any further restrictions or prescribe any medications (R. 289-90; *see also* R. 32). The doctor advised Ms. Edwards that she was scheduled to see a doctor in general internal medicine a week later (R. 291), but there are no records from that visit.

In March 2011, at a hospital visit regarding a fractured ankle, the doctor reported that they "discussed in great detail the need for her to change her lifestyle," including the need for her to stop using crack cocaine and smoking cigarettes, to get a primary care physician, and to

---

[4] Ms. Edwards also was prescribed ferrous sulfate 325mg by mouth three times daily for the iron deficiency anemia.

3

maintain follow up with her doctors (R. 400). However, the doctor noted that "[s]he does not want to change things around" (*Id.*).

On January 22, 2010, a state agency medical consultant, Dr. Calixto Aquino, reviewed Ms. Edwards's medical record and completed a Physical Residual Function Capacity ("RFC") Assessment. Dr. Aquino listed Ms. Edwards's diagnoses as status post colostomy for colon cancer and history of anemia (R. 263). He determined that her medically determinable limitations, though not as disabling as she asserted, did cause some physical limitations (R. 264-65). He found that she could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, and sit with normal breaks for a total of about 6 hours in an 8-hour workday, with no other limitations (R. 264-71). Subsequently, on August 6, 2010, a state agency medical consultant reviewed Ms. Edwards's records and affirmed Dr. Aquino's RFC assessment (R. 271-73).

**B.**

At the hearing on June 17, 2011, Ms. Edwards testified that she is unable to work because of the colostomy bag, fatigue, and her need for frequent bathroom breaks (R. 30, 33, 35-36). Ms. Edwards stated that it is very hard for her to do anything concerning her left side where the colostomy bag is located, including cutting her toenails, putting on and tying her left shoe, washing her left leg or foot, and putting on a left sock or pant leg (R. 30).

She testified that her colostomy bag detaches about twice a week (R. 33). She stated that she cannot bend, stoop, or be around heat because doing so can cause detachment (R. 33, 37). Replacing the bag takes about fifteen to twenty minutes, but due to cost she tries to make one bag last a week (R. 33).

4

Ms. Edwards testified that she takes a bathroom break every twenty minutes (R 36). When asked if she had notified her physicians of the frequent urination, she testified: "[h]e says well that's common. It's just doing it's job" (R. 38). Ms. Edwards stated that the bag becomes "active" when she wakes up, and she needs to use the restroom (R. 45). For instance, the morning of the video hearing, she woke up at 5:00 a.m. to allow "it time to get all out what it has to do" before leaving at 7:30 a.m. (*Id.*). She arrived at the hearing at 8:30 am and went to the bathroom twice in the hour before the hearing began (*Id.*).

Ms. Edwards testified that after the colostomy bag was inserted, she tried working at L&O Packing Company as a sorter, but she had to stop to go to the bathroom every fifteen to twenty minutes (R. 40-41). According to the testimony, her boss let her go because "I spent more restroom time than I did working time" (R. 41). In addition, she testified that she was dismissed from "any job I ever had" because she spent more time in the restroom than performing work (R. 36). Ms. Edwards testified that the colostomy bag is fine when she is standing, but not when she is carrying something or working because it swells up (R. 43). She stated that the colostomy bag "knows things before I know it half the time," and when she is in public "it will just start going to the restroom" and "start gassing up really loud and embarrassing" her (R. 43-44).

After the sorter position, Ms. Edwards testified that she next worked as a babysitter in 2007 (R. 29). However, she stopped babysitting because the colostomy bag would detach and swell either after carrying or being kicked by the baby (R. 41-42).

Ms. Edwards stated that she can do anything that involves standing, such as washing dishes, cooking, and sweeping; however, she cannot sit for more than two and a half hours without feeling pressure and tension in her stomach, which causes gas and discomfort (R. 35,

5

37). After she repositions herself, she can sit for another thirty to forty-five minutes (R. 35). It is more comfortable for her to lean back in a reclined position (R. 34). In addition, she testified that she cannot carry more than a ten-pound bag of potatoes (R. 35).

The vocational expert ("VE"), Kari Seaver, testified that none of Ms. Edwards's previous jobs constituted significant gainful activity (R. 48). The ALJ's first hypothetical asked the VE to "assume an individual of the same age, education and work experience as the claimant and has residual function capacity to occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for six hours, sit for six hours, unlimited pushing and pulling and occasionally postural activities" (*Id.*). The VE testified that such a person could perform unskilled labor such as a hand packer, assembler, and sorter (*Id.*).

The ALJ next asked the VE to assume the same limitations, but additionally limit the individual to unskilled sedentary work (R. 48). The VE testified that the individual would be capable of performing work such as a sorter, assembler, or packager (R. 48-49). The ALJ then asked the VE to consider a person who "needed to take, have a bathroom break, one additional bathroom break per hour" (R. 49). The VE opined that such a person would not be able to perform any of the jobs previously cited because Ms. Edwards would be off task too much (*Id.*).

Next, Ms. Edwards's attorney asked how many bathroom breaks an employee is allowed with these types of unskilled positions (R. 49). The VE explained that such an employee is allowed two fifteen-minute breaks and a thirty-minute lunch break and can be off task a total of another twelve minutes, presumably for bathroom breaks (*Id.*). The VE further concluded that anything more than that amount of time off task would not be tolerated (*Id.*). Then, Ms. Edwards's attorney asked the VE to assume Ms. Edwards was off task about 15-20 percent of the time due to reduced ability to concentrate, embarrassment, and the need to take breaks (*Id.*). The

6

VE testified that an individual can be off task up to 15 percent of the workday, but if an individual is off task for more than 15 percent, then no work would be available in the economy (R. 50).

### C.

In a written opinion dated August 12, 2011, the ALJ found that Ms. Edwards was not disabled under the Act from the alleged onset date through the date of the decision (R. 11-17). The ALJ applied the familiar five-step sequential inquiry for determining disability set forth in 20 C.F.R. § 404.1520, which requires the ALJ to analyze whether Ms. Edwards (1) had not engaged in substantial gainful activity during the period since the alleged onset date; (2) had a severe impairment or combination of impairments; (3) had an impairment that met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could perform her past relevant work; or (5) was capable of performing any other work in the national economy.

At Step 1, the ALJ found that Ms. Edwards had not engaged in substantial gainful activity since November 17, 2009, the application date (R. 13). At Step 2, the ALJ deemed the following impairments severe when considered in combination: status post colostomy for colon cancer and history of anemia (*Id.*). At Step 3, the ALJ determined that Ms. Edwards's impairments or combination of impairments do not meet or medically equal a listed impairment (*Id.*).

The ALJ then found that Ms. Edwards has the RFC "to perform light work as defined in 20 CFR 416.976(b) except she can occasionally perform postural activities that include climbing, balancing, stooping, kneeling, crouching and crawling" (R. 13).[5] The ALJ stated that she limited

---

[5] The Social Security regulations define "occasionally" as occurring up to one-third of the work day. SSR 83-10.

7

Ms. Edwards to occasional postural activities due to her testimony that she had "issues with her colostomy" (R. 14).

Nevertheless, the ALJ concluded that Ms. Edwards had the capacity to perform light work, because the ALJ found that the medical record did not support her testimony and subjective complaints of disability (R. 14-15). The ALJ pointed out that Ms. Edwards did not have any reported problems with the colostomy until July 2009 (R. 14). In addition, beyond the two times she went to the hospital for bleeding in the bag, Ms. Edwards visited the hospital only to pick up supplies (R. 15). The ALJ also stated that the medical record "does not contain complaints of functional limitations or fatigue concerning her colostomy" (*Id.*). Further, the ALJ observed that Ms. Edwards has never worked at the substantial gainful activity level and that her "minimal lifetime earnings do not reflect a desire or willingness to work" (*Id.*). In addition, although Ms. Edwards testified that it became too difficult for her to work as a babysitter in 2007, at a hospital visit in March 2010, Ms. Edwards reported that she "enjoys babysitting her cousins" (*Id.*).

The ALJ afforded "great weight" to the opinion of the physician who treated Ms. Edwards during her hospitalization and colonoscopy on July 3, 2009 (R. 15). That doctor stated that Ms. Edwards could resume her daily activities as tolerated such as dressing, bathing, cooking, traveling, cleaning/laundry, walking, etc., except no heavy lifting (*Id.*). The ALJ then considered the opinion of the state agency medical consultant in January 2010, which was affirmed in August 2010, which concluded that Ms. Edwards could do light work with no additional limitations (*Id.*). The ALJ afforded these opinions only "some weight" because "given [Ms. Edwards's] complications," the ALJ determined that "occasional postural limitations are also warranted" (*Id.*).

The ALJ also afforded "great weight" to the opinion of the physician who treated Ms. Edwards during her hospitalization and colonoscopy on January 10, 2011 (R. 15). That doctor stated that Ms. Edwards had no additional activity restrictions, and that she could perform her daily activities such as dressing, bathing, cooking, traveling, cleaning/laundry, walking, etc. (*Id.*).

At Step 4, the ALJ found that Ms. Edwards had no past relevant work (R. 15). At Step 5, the ALJ found that Ms. Edwards could perform jobs that exist in significant numbers in the national economy (R. 16). The ALJ observed that when the VE was asked whether jobs exist in the national economy for an individual with Ms. Edwards's age, education, work experience, and RFC, the VE testified that the individual would be able to perform the employment requirements of jobs such as a hand packer, assembler, and sorter (*Id.*). Consequently, the ALJ concluded that Ms. Edwards was not disabled as defined by the Act, from November 17, 2009, through the date of the decision (*Id.*).

### III.

We uphold an ALJ's determination if it is supported by substantial evidence, meaning evidence a reasonable person would accept as adequate to support the decision. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (citation omitted). In asking whether the ALJ's decision has adequate support, we will not reweigh the evidence or substitute our judgment for that of the ALJ's. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citations omitted). A decision denying benefits need not address every piece of evidence, but the ALJ must provide "an accurate and logical bridge" between the evidence and her conclusion that a claimant is not disabled. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation omitted).

Ms. Edwards raises a series of challenges to the ALJ's decision. We focus on one that necessitates remand here: the ALJ's failure to address how Ms. Edwards's frequent trips to the

restroom would affect her ability to maintain steady employment (Pl.'s Mot. at 8). Ms. Edwards testified that she has to go to the restroom several times an hour, and she was laid off from jobs for spending more time in the restroom than working. Plaintiff argues that this renders her disabled and unable to work, as the VE testified that a person could not maintain employment if she was off task more than 15 percent of the work day (*Id.* at 8-9).

The Commissioner responds that the record does not support Ms. Edwards's contention that she would be off task more than 15 percent of the day (Def.'s Mem. at 6). The Commissioner contends that because the ALJ noted that the record "does not contain complaints of functional limitations or fatigue concerning her colostomy", and because the ALJ found Ms. Edwards's testimony was not fully credible, the ALJ's RFC finding should be upheld (*Id.*; R. 15).

"Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Thomas v. Colvin*, No. 12-3354, 2013 WL 4106366, at *4 (7th Cir. Aug. 13, 2013) (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). In *Thomas*, the Seventh Circuit held that the ALJ's failure to address the evidence in the record that the claimant needed a cane was "critical" and necessitated remand, because the VE testified that the claimant could not perform any light work if she needed to use a cane and thus, based on her age, would have been found disabled. *Thomas*, 2013 WL 4106366, at *3-4.

In this case, the ALJ did not discuss of Ms. Edwards's testimony that she could not maintain employment due to her need for frequent bathroom breaks and no discussion of the VE's testimony that the claimant could not maintain employment if she was off task more than 15 percent of the work day. As in *Thomas*, this omission was "critical." When asked how many bathroom breaks an individual is allowed for the unskilled positions available to Ms. Edwards,

the VE testified that those employees are allowed two 15 minute breaks, a 30 minute lunch break, and an additional 12 minutes of time for bathroom breaks (R. 49); *i.e.*, 72 minutes total in an eight hour, or 480 minute, work day. The VE testified that the claimant could not perform any work if she was off task more than this, which totals 15 percent of the work day. However, Ms. Edwards testified that she would need to be off task more than 15 percent of the work day – every twenty minutes – because of her frequent need for bathroom breaks.

Although the Commissioner correctly points out that the evidence of frequent urination is limited to Ms. Edwards's testimony (Def.'s Mem. at 6), "a claimant's testimony about her symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." *Thomas*, 2013 WL 4106366, at *5 (quotations omitted) (citing SSR 96–7p; *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ stated generally that "[t]he record does not contain complaints of functional limitations or fatigue concerning her colostomy" (R. 15). But, if the ALJ considered the testimony as to the frequency of her urination lacking in credibility, we have no explanation as to why that was so. Thus, the ALJ did not sufficiently confront the evidence of Ms. Edwards's frequent urination which, if believed, would render her unable to work according to the VE. *See Thomas*, 2013 WL 4106366, at *4. As a result, remand is necessary here.[6]

---

[6] Given our decision to remand on the foregoing ground, we need not reach judgment on Ms. Edwards's other arguments in support of remand. That said, we flag several additional issues that the ALJ may wish to address on remand. *First*, the ALJ found Ms. Edwards not fully credible in part because she testified that she became too disabled to babysit a nine-month old in 2007, while stating that in 2010 that she enjoys babysitting her cousins (R. 15). We agree with plaintiff that the ALJ did not adequately explain why Ms. Edwards's testimony here was inconsistent (Pl.'s Mot. at 11). Her testimony that she was unable to babysit an infant in diapers is not necessarily inconsistent with evidence that she enjoyed babysitting her cousins, as there was no evidence that the cousins were of a similar age or presented similar physical challenges as caring for an infant.

*Second*, despite finding that Ms. Edwards's history of anemia was a severe medical impairment, the ALJ did not discuss whether the anemia resulted in any functional limitations. While the ALJ stated that the medical record "does not contain complaints of functional limitations or fatigue *concerning her colostomy*" (R. 15) (emphasis added), the ALJ did not mention any evidence in the record regarding Ms. Edwards's anemia.

11

## CONCLUSION

Based on the foregoing, plaintiff's motion is granted (doc. # 17). The decision of the ALJ is reversed and the case is remanded to the Social Security Administration for further proceedings consistent with this opinion. Our decision here should not be taken as a signal that on remand, Ms. Edwards inevitably must be found disabled.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: November 15, 2013**

---

*Third*, the ALJ found that Ms. Edwards could "occasionally" perform certain postural activities as part of light work (R. 13), which did not match either the agency consultants' opinions that Ms. Edwards could perform light work without limitations or Ms. Edwards's testimony that she could not perform any work. On remand, the ALJ should address this point further (including, if she deems it necessary, by seeking additional medical opinions) to explain more fully the basis for her finding.